Case number 24-101, In re Sealed Case. Mr. Wright for the appellant, Ms. Wicks for the appellee. Morning, counsel. Mr. Wright, please proceed when you're ready. Thank you, Your Honor. Judge Sreenivasan, it may have pleased the court. Appellant, who is present here today, substantially contributed to identifying and exposing an industry-wide tax abuse scheme. The question before the court, what is the standard of review in whistleblower cases before the U.S. Tax Court? Your Honors, the tax court standard of review in whistleblower cases arising under Section 7623B1 is de novo. That straightforward conclusion is supported by statutory text, which speaks only in terms of shall and Congress's purposes, which were to replace the IRS's effectively unrulable discretion in whistleblower cases with a mandatory scheme that was predictable and governed by law. De novo review is also the only way to avoid upending Congress's entire scheme as unconstitutional under the Appointments Clause. This court should reverse. In the alternative, this court should reverse because the whistleblower office abused its discretion. Its findings in support of the reduced award in this case contradicted its own previous findings in closely related cases. And its alternative finding, that petitioner was not the original source of the information that exposed the tax fraud in this case, is squarely contradicted by all the evidence in the record, including the whistleblower office's own findings that petitioner identified and exposed the issue in 2005, which had been previously unknown to the IRS. Such inconsistent, unsupported decision making is the very definition of an abuse of discretion. And so even if the tax court was correct that an abuse of discretion standard applied, the tax court erred in affirming the reduced award for this particular taxpayer. Your Honor, subject to your questions. So I just have a question on the latter part of the argument. Let's just put aside a standard review question for the moment for these purposes, and let's just focus on the second question that you posed on that one. Is there any dispute that it's true that unlike in the past instance, in the current instances before us in this case, the IRS team was already investigating the issue at the time that the information came over from the Senate? I take it that it's undisputed that that's a distinction. Now, you might think that's a distinction without a difference because. It may be that the reason that the IRS team was looking into it was because of information that was supplied by petitioner at the outset to begin with. But I just want to get straight in my mind whether there's any dispute that there is, in fact, a distinction. We could have an argument about whether it's a distinction with the difference between the two scenarios and that this one, unlike the others, the IRS team had already embarked on an investigation. Yes, Your Honor, that is the distinction, and that's precisely the distinction that the whistleblower office and the particular analysts involved found. If I can delve into the facts, the whistleblower office sent us a series of email chains down to the field team to inquire. Can I just sorry, I just want to make sure I understand what you're agreeing to. When the Senate committee information is turned over. But, Your Honor, there were four related cases under under the same scheme. Each one had a variation in terms of when the field team was alerted to the petitioner's information in the first instance in 2005 versus whether or not they became alerted to the petitioner's information arising out of the permitted subcommittee on investigations report. So there's some slight variations. There was. But I think that if your position is that for some of the other entities, the team was advised based on the whistleblower's 2005 contacts, then I would think you would be disagreeing with what Judge Srinivasan said. No, it might be misunderstanding. No, no, Your Honor. It's not my intention to disagree. That is the distinction here. And in that there was a decision by the analyst that based on the feedback from the field team, there was an email exchange that the reason that this investigation started, according to the field team, was that this was a subsequent year examination as of 2006. But there was an objective fact decided in the other cases that the petitioner was the one that actually brought the information forward to the IRS in the first instance in 2005. So there's there's a bit of a fact issue that remains in dispute as to what actually started this particular field team with this targeted taxpayer to start the investigation. So that's the factual issue. And we submit that the record, the existing record in the mystery of claim file doesn't fully address this particular issue. And this email exchange is at the appendix at 219 to 227 that goes through this. There's open questions concerning whether or not certain ideas, IDRs, I'm sorry, or in existence, which would have revealed sort of the start. But there was a retired IRS employee who wasn't available. So this, Your Honor, this is the distinction in this particular case. So then where that leaves us, I think, and with respect to this kind of second way of looking at this, strip away the standard review for the moment, is that for you to prevail and it might be enough. But just so I understand the issue for you to prevail, it's necessary for us to conclude that the question of how the IRS team that was conducting this investigation decided to launch and whether that was predicated on information supplied by the petitioner is critical. Because if we don't say your position is we don't. It may be that they had already launched by the time they got the information to the Senate committee, unlike all the other situations. But we just don't know why they launched in the first place. And if that was because of what the petitioner supplied at the outset in 2005, 2006, then that then they should all be treated similarly. If they launched that for some other reason, then maybe there is a reason to treat them different. Yes, Your Honor, that's correct. That we believe we would prevail in that event if there's an affirmative finding of fact that petitioner objectively was the first to alert the IRS in 2005. In addition, we believe we would prevail under the abuse of discretion standard for a number of additional reasons. Within the actual findings, initial findings of the Whistler office, the factual findings, they found that two factors did apply, but those factors did not make their way into the ultimate one positive factor that was determined in this case. So there's some inconsistency internally within the actual findings. Those two ways of looking at it seem to sort of merge. I mean, I think there's probably a way to distinguish them, but they seem to sort of merge. Because the one factor that you say was floated at the outset but then wasn't factored in the decision at the end is whether there was the petitioner identified something new that the IRS hadn't looked into before. And the way that he would have identified something new that the IRS hadn't looked into before was if he were the source of the information at the outset. Correct. In some ways, they kind of they sort of come together. It all turns on why did this IRS team launch? Correct. And I would agree that there's some conflation with the positive factors in terms of how they're drafted under regulation. And then on the if I can ask you a question on the standard review, unless you have further questions about this follow up on the facts again. So you're agreeing that the key is whether the analyst had a basis to find that the – or you're in fact agreeing that the team was on to these issues before 2009. And the question being why were they on to these issues? So typically one way of thinking about this case would be it should be your burden if it's abuse of discretion to show something contrary to the analyst's finding in the record. And if he's saying the team was on to these issues independently of any information from the whistleblower, what would you point to as the contrary record evidence? Yes, Your Honor. Petitioner supplemented the record before the tax court and also raised these issues before the whistleblower office as well. That he first brought this scheme to light in 2005. And several of the other related taxpayers for the scheme, there was an adjudicated finding of the positive factor that it was in fact petitioner who first alerted the IRS to this overall tax scheme. So there's – it's almost like administrative race judicata. It's a factual finding that the agency's already made. That he was the one – So you're relying on the findings in the other cases, but you're not saying that there is a piece of evidence in the administrative record that somehow ties this team to the whistleblower's pre-2008 context. That's correct. That is the missing gap, Your Honor, in the existing administrative record. And the sole evidence that we can point to that the government proffers is what I identified, that email exchange where the whistleblower office analysts asked the field team, what started this? And the response is this was a subsequent year examination. But subsequent to what? There's actually no further identification as to how this particular field team started the audit in the first place. And we believe that the record based on principles of administrative race judicata in terms of a decided fact already that this positive factor applied in 2005 for his actions in 2005. That it only could have been petitioner in this case that alerted or rather should say that the field team learned about this particular issue through petitioner's actions. And then the record also has a series of events after 2005 as we supplemented it that the IRS engaged in internally with various field teams to actually expose this issue. And this is set forth in the appendix as well, Your Honor. So if we if we don't buy the race judicata notion, let's just take a position on that. But let's just assume for arguments purposes that we don't buy that. So the way that we get where you want us to get isn't predicated on what's happened in the other related cases that we're only looking at the record in this case. If we're if we're confined to that, then did you satisfy your burden to try to get the IRS and the tax court to look at how the team originally came into enough information that they launched the inquiry and that that, in fact, stemmed from petitioner? Your Honor, we believe we did with supplementing the record with the administrative award determinations in the related cases, along with other information we obtained from the other cases, the administrative record and other cases. So we believe we did submit that. We did. You submitted the other. So you could say we submitted the other information, even if it's not race judicata or collateral or something like even if these schemes don't work that way. It's still evidence as to how this team would have come in to. That's correct. No, no. And so we had a series of briefing on a motion to supplement. And so through a FOIA request and a request for the administrative determinations in the other cases, we were able to submit those. And then we also had possession of the administrative claim files and some other actions. And so the lower court agreed to supplement the record with our additional information so that we could build this factual record. We did not have a trial in this particular case, unlike in a related case, taxpayer six, five, four, four. If had there been a trial, then this is one of the issues that we would have sought to subpoena and for testimony, the field office and the whistleblower office as well to flesh out this actual factual issue. And then on the standard question, I just have one question under the statute. So I take your point that this shall a couple of times. But one way to look at that is just to say that shall applies to the end points so that it has to be between fifteen and thirty. But then deciding the precise point along the continuum, that's not the type of thing that the tax court is going to second guess to the umpteenth degree when there's an analyst who's done a lot of work to figure out exactly where between those two end points the case might fall. What's wrong with it? Just as an intuitive matter, there's something to that. What's wrong with looking at it that way? I understand the question, and I would offer that the statutory design provides the answer and that there shall be a mandatory award. And that award shall be determined by the extent to which the individual's individual's information contributed to that to that action. So the statute lays out two mandatory requirements ultimately, provided that the two million dollar thresholds met, provided there's a properly filed claim file. I believe that the actual computational framework and that analysis can be subjected to judicial review under the DeNovo standard. So it's really evaluating the extent to which the individual substantially contributed to the action set forth under 7623B1. That is the precise question that the tax court can evaluate on a DeNovo standard. And certainly it can rely on the regulations, the computational framework, the assessment of the positive factors or not. And that analysis also can be subjected clearly to DeNovo review standard. My colleagues don't have additional questions for you. If not, we'll give you a little time for rebuttal. I have one question, which is why didn't you raise the appointments clause argument in front of the tax court? Thank you, Your Honor. Perhaps we should have raised it before the tax court. But I believe the government here is confusing the issue of forfeiture of a claim versus the forfeiture of an argument in support of the claim. And our argument here is not that the Whistleblower Office and the management and centralization of the Whistleblower Office arising out of the 2006 Act or Amendment, I should say, is somehow unconstitutional. It's simply that I'm giving deference to principles of constitutional avoidance. When a whistleblower challenges an award determination at that point in time, then that ultimate decision should be reviewed by a principal officer of the United States. So it's an argument. This is a constitutional avoidance argument in service of your argument that the standard review is DeNovo. Correct. That's right. Thank you. Thank you. Thank you, Your Honor. Thanks, Wicks. Thank you, Chief Judge. And may it please the court, I am Marie Wicks on behalf of the Commissioner of Internal Revenue. Section 7623B1 provides an award window of 15 to 30 percent of collected proceeds when the IRS proceeds with an administrative or judicial action based on information brought to the Secretary's attention by an individual. The statute also says that the amount the determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action. Here, there is no dispute that petitioner properly received an award under this statute. Rather, the issue in this case is whether the tax court properly sustained the 22 percent award determination made by the Whistleblower Office, which was squarely within the window of 15 to 30 percent, and which was based on petitioner's substantial contribution to an audit that had already been well underway when the audit team received petitioner's information. So can I ask you this question? It sounds like everybody agrees that the audit was already underway when the information came from the Senate. But let's just suppose, and there may be a factual dispute about this, but just put that aside for a second. Let's just suppose that the reason the audit was already underway is because the audit team came to know about this issue from petitioner. It was information the petitioner gave in the 2005, 2006 range, and that's what launched this whole thing. Let's just suppose that that's right. If that's true, then what would be the rationale for having a different level of, as between the 22 and 30 percent, what would be the rationale for doing something different in this case? Even though the inquiry is already underway, the reason it was already underway, circle back, was because of something that petitioner supplied. Yes, Your Honor. Assuming that that is the case, although the audit team was insistent that they did not proceed based on the whistleblower's pre-2008 information. I want to hear about that, but let's just assume that it is, and then you can explain why the assumption is actually wrong. But if the assumption is right, then why isn't there something quite significant to the proposition that, well, at that point, then these all ought to be the same? Right, so the substantial contribution is the standard here, and the whistleblower analyst stated in his appendix, page 22, his award recommendation memorandum. He stated that the PSI report, which is the subcommittee investigation, included voluminous schedules that were provided by the target taxpayer to the PSI, and the information from the PSI database was reviewed and used to request information from the taxpayer through information document requests by the examiners. And then that was then used to determine the underwithholding of the U.S. tax. So that's another component of the degree to which the whistleblower's information contributed to the award amount. There was also a lot of information coming in from the taxpayer. To the extent that I do, are you saying that, are you just taking on the premise, which is that actually it wasn't the petitioner's information that caused the audit team to look into this? Is that what you just said is in service of? No, Your Honor, the subcommittee investigation report included information provided by the taxpayer as well. Although the whistleblower analyst did acknowledge that the petitioner here was the source of the permanent subcommittee information. I'm missing something basic then. Why are we looking at what the subcommittee supplied for purposes of the question that I posed to you? Because I think that the question that I'm interested in, and if I shouldn't be interested in the question, I'm interested to hear why not. But the question that I'm interested in is, let's not look at what the subcommittee supplied to the IRS. Because I understand that point. I think the question that's been raised by petitioner is, if you look at the distinction that was posed as the reason that this is 22%, whereas the other cases are 30. The distinction that was posed is that here, the inquiry was already underway by the time the information came from the Senate. And whereas in the other cases it wasn't. And that could be something, because it could make it sound like, well, the petitioner didn't do as much here as the petitioner had done in the other cases, because here the IRS was already onto it and they were looking into it. But then if you look deeper and you say, well, the reason the IRS is already onto it was because it was something that petitioner supplied. Well, that starts to break down. So at that point, I'm not sure I care about what came from the Senate. What I think care about is, why was the IRS already looking into this? And if that traces back to petitioner two, then it raises the question of, well, why doesn't the same 30% figure apply? And that's my question to you. If it's true that the reason the IRS was already looking into it was because they got information from petitioner, then why wouldn't it be the case that 30% should be the right figure here also, like in the other cases? The record reflects that the IRS audit team was looking into these issues prior to the 2008 submission of the whistleblower's information, prior to January 2009, when the PSI information was forwarded to the audit team.  So the taxpayers form 1042 for withholding taxes from foreign entities. Can I ask this way? If there was a document in 2006 that said, from someone else in the IRS to this team, this person has identified these two issues. You should look into them. And that's how this field team was onto these two issues before 2008. Then the whistleblower would be entitled, should have gotten 30%, right? Not necessarily. That would be material. But first, 7623B1, that framework applies to information brought to the secretary's attention after the effective date of the statute, which was December 20, 2006. So that's one time frame difference. But also, it is a substantial contribution. So there's not... It's not necessarily the case where the IRS was not... Sorry, let me ask you a different one. Yeah. My understanding of this decision is that it rests on a very specific factual finding. In this one case, as opposed to all the others, this field team was onto these two issues independent of any information from the whistleblower. That's what it says in footnote four. That's what it says at the end. That's the key factual finding, right? Yes, Your Honor. And I guess my question is, what is the support for that finding? There is the insistence from the audit team when the whistleblower analyst received direction from his manager to expound upon why he was recommending a 22% award versus the 30%. So he went back to the audit team and asked them specifically why... This is where I get tripped up. So what he asks is, did you start the exam independent of whistleblower information? They say, yes. And the analyst realizes there could be a problem. And he asks, were there other issues in the exam? And they say, yes. So it's still entirely unclear whether they were looking in... In other words, those emails do not answer the question, were you looking into these two issues independent of the whistleblower? They say, we had started an audit into the company for those years independent of the whistleblower information. Do you see what I'm getting at? There's actually not a statement that they were onto those two issues independent of the whistleblower. I understand that. And in addition to the emails with the audit team, there are also the examiner's risk analysis worksheet and also the lead sheets for the examination. And those are in Supplemental Appendix 168. Those read favorably to the analyst, those do establish that the team was looking into those two issues before 2009. Granted, they do not answer how they were looking into those two issues. And again, if you step back, and I think it is undisputed that the finding here is this one team, in contrast to the entire IRS, and in contrast to every other field team, somehow was onto these two issues independent of the whistleblower. I would be looking for something that affirmatively answers that question. In fact, I think the analyst was looking for something affirmative. And I'm not sure he received it. So again, I'm sorry. I know maybe I'm...  One other... What is the affirmative indication they found it independent of the whistleblower's information? One other piece of statements in the record, Appendix page 186, is the timeline of the petitioner. And that actually came from the administrative record in one of his other claims. And it states in there that the IRS stated that currently 12 audit teams have access to the PSI documents, but none of the earlier petitioner's submissions were sent to the field. So that's an additional confirmation that his earlier information was not actually given to an exam team. Do you have a citation for that? It's Appendix 186. Is that the top bullet? First bullet up? Is that the one you're looking at? It is. I don't have the exact page in front of me, but I believe it's midway down. I can... Here we go. Oh, it's the first bullet and then the one right now. It's 1, 2, 3, 4, 5th bullet, October 26th, 2009. Is it based on the same quote that's in the first one, which is... Let's see. Okay, it's similar. It says, but none of the earlier petitioner's submissions were sent to the field. Is that the part you're relying on? Yes, Your Honor. So would you be... You would be saying you would combine this with just the simple fact, the risk analysis and the call log that show the team was looking into these issues and that that's enough to support the... Yes, Your Honor. And our brief lays out the several instances in the record that would support that and the transcript of the taxpayer as well shows when the tax year was opened for audit. So June 2006 was when the 2003 tax year was opened, and then I believe March 2008 is when 2004-2005 tax years were opened for audit. And those are supplemental appendix. Would you agree... So this goes to whether, in fact, the audit team started looking into this for reasons independent of anything supplied by petitioner. And I take it... Yes, Your Honor. If that's true that that's what happened, then that's the basis for 22%, in this case, 30% of the others. Would you agree with the converse that if it were true that the reason the audit team started looking into this was also because of information supplied by petitioner, although information supplied by petitioner at an earlier time, then there wouldn't be a reason to draw a distinction between this case and the prior ones and that 30% should be the figure in all the cases? Your Honor, I would not say definitively that if that were true, then it would automatically be 30%. That's the statutory maximum. And the consideration is substantial contribution and not but-for. So I'm going to assume that it wouldn't have... But that is a material difference. But-for is pretty substantial, usually. I mean, if it wouldn't have happened at all without it, then that seems like a fairly substantial contribution. It carries weight. Yes, Your Honor. And so here the analyst did ensure that he made this award recommendation consistent with the other award recommendations by taking into account the fact that this audit had been well underway. They were looking into these issues before receiving the whistleblower's information. And all that this court needs to decide here is whether the tax court properly sustained the whistleblower's 22% award determination. The statute clearly states that the determination of the amount of the award by the whistleblower office shall depend upon the extent to which the individual substantially contributed. So that window of determination is up to the whistleblower office who has access to the administrative record to determine based on its own discretion there. There are no further questions? Just one last question. I guess all that would be left. If this on 186 establishes that the field team didn't receive anything from within the IRS, the only thing left would be, sorry, that would have tipped them off to these issues before receiving the PSI information. The only thing left would have been the Wall Street Journal article. And I suppose you would say that that would be pretty speculative to think that the team was on to these issues because of the Wall Street Journal article. Right, and I think the whole universe of these documents showing that the exam team was looking into the withholding issues before receiving the information as a universe that contributes to the analyst's conclusion that the substantial contribution in this case was less than that in the other cases where the IRS was alerted to the identification of the taxpayers and collected based on that, which weren't to the 30% in those situations. Okay, thank you, counsel. Mr. Wright, we'll give you three minutes for rebuttal, and I'm sure you'll tell us your view on this language, this bullet point. Yes, yes, thank you, Your Honor. It's part of that. Absolutely. And Judge Garcia, if I may, at Appendix 184, this actually starts the timeline of events according to the records maintained by the whistleblower office, at least some records in the whistleblower office. And in bulletized format, it actually identifies beginning in June of 2005. This is when the whistleblowing activities begin. This is a government-produced document. I will note this is set out on brief, but, in fact, the underlying claim file, underlying Form 211 at issue is not actually 2008. It's actually March 2006. We proffered that as part of the supplemental motion. I certainly appreciate all that. Isn't the bullet on 186 then says, but the field team didn't have access to any of that? If I can point you, alert your attention to Appendix 184, the bullet point starting with May 16, 2006. You'll see that there was an IRS meeting in New York to discuss the whistleblower's submission and attendance for representatives from CID, CT Council, and LM Field. So we have every reason to believe that field team members were present at that meeting, and I believe there's also another document within the appendix that actually has the list of attendees at that particular meeting by position title. So there are factual issues here. Is your position on the language that the government's counsel pointed to, is that that language is just wrong, or do you have an answer to even that at all? Your Honor, I'm suggesting that, in fact, a field team was involved as early as 2006 with a debrief with the IRS with various components of the IRS to discuss the whistleblower's information. So there certainly is a factual issue concerning. The ultimate question, Judge Srinivasan, that you asked is, why was the IRS looking at this, and then how did the IRS begin to look at this? And so these are factual issues that still remain, and I understand the distinction. This case, according to the whistleblower office, is different, because there's a claim that it began not based on the whistleblower's information, but there is significant evidence that we've proffered to the record before the whistleblower office that suggests that, in fact, the whistleblower was the source of the information. And I believe, Your Honors, that the way to resolve this issue is that if the tax court has de novo review, then it has plenary authority to address this question, to make findings of facts, to make conclusions of law, and to really analyze and assess this fact-based issue. Can I ask, for this document that we're looking at, the timeline of events, is that something that was before the analyst, or was this part of your motion to supplement before the tax court? The information generally, Your Honor, in terms of the initiation in 2005, this document should have been before the analyst because he was part of all the claim files that were involved, but it was not part of the administrative record. If my research is correct, I believe this was part of our supplement that we tendered as part of the briefing. Supplement to the tax court? Yes, Your Honor. If no further questions, Your Honor. I don't think so. All right. Thank you very much. Thank you, counsel. Thank you to both counsel. I take this case, Utterson.
judges: Srinivasan; Henderson; Garcia